O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TONNEY KILLENSWORTH, | Case No. 2:19-cv-06029-VBF (MAA) |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |
| v. | |
| D. GODFREY *et al.* | |
| Defendants. | |

## I.    INTRODUCTION

On July 10, 2019, Plaintiff Tonney Killensworth ("Plaintiff"), an inmate at California State Prison - Corcoran, proceeding *pro se*, filed a Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Compl., ECF No. 1.)  The Court has screened the Complaint as prescribed by 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B).  For the reasons stated below, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.  Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either:  (1) file a First Amended Complaint, or (2) advise the Court that Plaintiff does not intend to file a First Amended Complaint.

///

## II.     PLAINTIFF'S ALLEGATIONS AND CLAIMS

The Complaint is filed against:  (1) Correctional Sergeant D. Godfrey, (2) Correctional Sergeant R. Aguirre, (3) Correctional Lieutenant G. Marshall, and (4) Correctional Lieutenant B. Legier (each a "Defendant" and collectively, "Defendants").  (Compl. 2)[1]  Each Defendant is sued in his individual capacity.  (*Id.* at 11.)

The Complaint[2] contains the following allegations and claims:  This lawsuit arises out of a July 11, 2018 altercation between inmates Castro and Jackson, which culminated in inmate Castro stabbing inmate Jackson in the neck.  (*Id.* at 5.)  Plaintiff alleges that he was not involved in the incident, was locked in his assigned cell at the time, and "was oblivious to what was going on."  (*Id.*)

That night, Plaintiff received a rules violation report ("RVR"), which charged Plaintiff with soliciting inmate Castro to murder inmate Jackson, and was placed into administrative segregation ("ad seg") by Defendant Marshall.  (*Id.* at 4–5.)  Plaintiff alleges that Defendants conspired with each other to fabricate documents and information relative to the RVR.  (*Id.* at 4.)  According to Plaintiff, there was no evidence of Plaintiff's personal involvement in the incident.  (*Id.* at 5.)

Plaintiff voiced his concerns about the flaws in his administrative segregation notice to a classification committee.  (*Id.*)  Instead of taking note of the misinformation given by a confidential informant and dropping the false charges against Plaintiff, Defendant Legier issued a second ad-seg notice to Plaintiff on July

---

[1] Citations to pages in docketed documents reference the page numbers generated by CM/ECF.

[2] Normally the Court would summarize the allegations in the Complaint and attached exhibits. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) ("If a complaint is accompanied by attached documents, . . . these documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim.").  However, while the Complaint references exhibits (*see* Compl. 3, 9), no exhibits were attached.

20, 2018. (*Id.* at 7.) The second ad-seg notice stated that "'confidential information' was received indicating you may have played a role in the attempted murder of inmate Jackson." (*Id.* at 5–6.) Plaintiff contends that this is a "very serious allegation to 'presume' without an eye witness account, [sic] the only thing left is a presumption of guilt." (*Id.* at 6.)

Defendant Aguirre was replaced as a senior hearing officer on Plaintiff's investigative employee report. (*Id.* at 3.) Plaintiff asserts that this was improper because a senior hearing officer must be a lieutenant or higher. (*Id.*) Plaintiff alleges that Defendant Aguirre denied all of Plaintiff's questions—which would have exonerated Plaintiff completely—and deemed them irrelevant. (*Id.*) Defendant Aguirre asserted that he did not decline Plaintiff's questions, as that could only be done by a senior hearing officer. (*Id.*) Plaintiff contends that Defendant Aguirre denied Plaintiff's due process rights to fully cross-examine the victim and others involved in the matter. (*Id.*)

Defendant Godfrey compounded the problem by denying Plaintiff's first-level appeal on August 16, 2018. (*Id.* at 9.)

Plaintiff alleges that he has been in the security housing unit ("SHU") for 365 days, and has another 180 days remaining in SHU. (*Id.* at 3.) As a result, Plaintiff asserts that he has not been able to practice his religion and attend the classes he needs; is confined in a cell twenty hours per day with two hours of daily exercise in a separate, slightly larger cell; is only permitted three showers per week; is not allowed phone calls; and has suffered severe emotional distress. (*Id.* at 4.)

Based on the foregoing, Plaintiff asserts four claims for violation of the Eighth Amendment's Cruel and Unusual Punishments Clause. (*Id.* at 3–10.) Plaintiff also alleges that his Sixth Amendment, due process, and equal protection rights were violated. (*Id.* at 3, 6.) Plaintiff seeks: (1) restoration of his good-time credits; (2) $200,000 in damages; and (3) unquantified punitive damages. (*Id.* at 11.)

## III.    LEGAL STANDARD

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma pauperis* (28 U.S.C. § 1915(e)(2)(B)).  The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is: (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard.  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915(e)(2)(B)(ii)).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8"), "which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'" *See Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007)).  In reviewing a motion to dismiss, the court will accept the plaintiff's factual allegations as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).  Although "detailed factual allegations" are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*,

4

556 U.S. 662, 678 (2009). "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss." *Park*, 851 F.3d at 918 (alteration in original) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001)). Rather, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." *Id.*

Where a plaintiff is *pro se*, particularly in civil rights cases, courts should construe pleadings liberally and afford the plaintiff any benefit of the doubt. *Wilhelm*, 680 F.3d at 1121. "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). A court should grant a *pro se* plaintiff leave to amend a defective complaint "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar*, 698 F.3d at 1212 (quoting *Shucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)).

## IV.   DISCUSSION

### A.   Plaintiff's Claims Potentially Are *Heck*-Barred.

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint

under [Section 1983]. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citations omitted).

A Section 1983 complaint must be dismissed pursuant to *Heck v. Humphrey* if judgment in favor of the plaintiff would undermine the validity of his conviction or sentence, unless the plaintiff can demonstrate that the conviction or sentence already has been invalidated, either through state litigation or federal writ of habeas corpus. 512 U.S. at 477, 486–87 (1994). However, the *Heck* bar applies only "where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005).

In *Edwards v. Balisock*, the Supreme Court applied *Heck* to bar a Section 1983 action involving allegedly defective prison disciplinary procedures resulting in a loss of good time credits. 520 U.S. 641, 648 (1997). The Supreme Court later clarified in *Muhammad v. Close* that an inmate's Section 1983 challenge to disciplinary proceedings are not barred by *Heck* if the challenge "threatens no consequence for [the] conviction or the duration of [the] sentence." 540 U.S. at 751. If the invalidity of the disciplinary proceedings, and therefore the restoration of good time credits, would not necessarily affect the length of time to be served, then the claim falls outside the core of habeas and may be brought pursuant to Section 1983. *See id.* at 754–55.

Applying that limitation, the Ninth Circuit concluded in *Nettles v. Grounds* that *Heck* did not bar a California inmate serving a life sentence from bringing a Section 1983 challenge to a disciplinary hearing that resulted in the loss of good time credits. 830 F.3d 922, 934–36 (9th Cir. 2016) (en banc). Because Nettles was serving a life sentence, success on the merits of his claim "would not necessarily lead to immediate or speedier release because the expungement of the challenged

disciplinary violation would not necessarily lead to a grant of parole." *Id.* at 934–35. "Under California law, the parole board must consider '[a]ll relevant, reliable information' in determining suitability for parole." *Id.* at 935 (quoting Cal. Code Regs. Tit. 15, § 2281(b)). "A rules violation is merely one of the factors shedding light on whether a prisoner 'constitutes a current threat to the public safety." *Nettles*, 830 F.3d at 935 (quoting *In re Lawrence*, 44 Cal.4th 1181, 1191 (2008)). The parole board may deny parole "on the basis of any of the grounds presently available to it." *Nettles*, 830 F.3d at 935 (quoting *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003)). Thus, "the presence of a disciplinary infraction does not compel the denial of parole, nor does an absence of an infraction compel the grant of parole." *Nettles*, 830 F.3d at 935.

Here, Plaintiff seeks restoration of lost good-time credits (Compl. 11), which could lead to an earlier release date depending on Plaintiff's sentence. If Plaintiff's sentence has a determinate term, restoration of lost good-time credits necessarily would result in a speedier release and would fall within the "core of habeas." If so, the lawsuit should be brought pursuant to 28 U.S.C. § 2254, not Section 1983. *See Muhammad*, 540 U.S. at 750. However, if Plaintiff is facing an indeterminate life sentence, the restoration of good-time credits would not necessarily result in an earlier release and Plaintiff's claims could be brought pursuant to Section 1983. *See Nettles*, 830 F.3d at 934–36.

The Court makes no ruling on the potential applicability of *Heck* at this time. If Plaintiff files an amended complaint, he should include the term of his prison sentence.

## B.    The Complaint Does Not State a Section 1983 Claim.

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the

7

Constitution and laws . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in original) (quoting 42 U.S.C. § 1983). The purpose of Section 1983 is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt*, 504 U.S. at 161. To state a claim under Section 1983, a plaintiff must allege: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Complaint only asserts claims pursuant to the Eighth Amendment Cruel and Unusual Punishments Clause. (Compl. 3–10.) However, Plaintiff also alleges that his Sixth Amendment, due process, and equal protection rights were violated. (*Id.* at 3, 6.) Mindful of the liberal pleading standards afforded *pro se* civil rights plaintiffs, the Court also examines the Complaint in light of the Sixth Amendment's Confrontation Clause, Fourteenth Amendment's Due Process Clause, Fourteenth Amendment's Equal Protection Clause, First Amendment's Free Exercise Clause, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and conspiracy. *See Alvarez v. Hill*, 518 F.3d 1152, 1157–58 (9th Cir. 2008) (holding that *pro se* litigant need not cite correct statutory or constitutional source of a claim to survive a motion to dismiss); *Ellis v. Brady*, Case No. 16cv1419 WQH (NLS), 2017 U.S. Dist. LEXIS 203458, at *15–16 (S.D. Cal. Dec. 8, 2017) (concluding that court could address plaintiff's claim asserted under the wrong constitutional amendment, as "it is the factual allegations, not the legal labels attached, which determine the issue"). For the reasons below, the Court concludes that the Complaint does not state any claims pursuant to Section 1983.

///
///
///
///

### 1. The Complaint Does Not State an Eighth Amendment Claim for Cruel and Unusual Punishment.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "In other words, they must not be devoid of legitimate penological purpose, or contrary to 'evolving standards of decency that mark the progress of a maturing society.'" *Morgan*, 465 F.3d at 1045 (citation omitted) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

A prison official violates the Eighth Amendment when two requirements are met. <u>First</u>, "the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations and citations omitted). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. 'The more basic the need, the shorter the time it can be withheld.'" *Id.* (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)). <u>Second</u>, subjectively, the prison official acted with "deliberate indifference" to an inmate's health or safety—that is, "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

///

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

### a.    Objective Prong.

Plaintiff alleges that he has spent 365 days, and has another 180 days remaining, in SHU. (Compl. 3.) As a result of his administrative segregation, Plaintiff alleges that he: (1) has not been able to practice his religion; (2) has not been able to attend needed classes; (3) is confined in a cell twenty hours per day with two hours of daily exercise in a separate, slightly larger cell; (4) is only permitted three showers per week; and (5) is not allowed telephone calls. (*Id.* at 4.) Of these allegations, only the long-term deprivation of outdoor exercise alleges a "sufficiently serious" denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834.

<u>Administrative Segregation</u>.  Administrative segregation does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. *See Anderson v. County of Kern*, 45 F.3d 1310, 1315–16 (9th Cir. 1995); *France v. Allman*, No. 15-cv-04078-JSC, 2016 U.S. Dist. LEXIS 178843, at *9, 2016 WL 7439577, at *3 (N.D. Cal. Dec. 17, 2016) ("Plaintiff's administrative segregation . . . does not violate the Eighth Amendment because placement in administrative segregation, even for an indeterminate term, does not constitute cruel and unusual punishment in violation of the Eighth Amendment."). The Ninth Circuit has held that "administrative segregation, even in a single cell for twenty-three hours a day, is within the terms of confinement ordinarily contemplated by a sentence." *Anderson*, 45 F.3d at 1316. "[P]rison officials have a legitimate penological interest in administrative segregation, and they must be given 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain

institutional security.'" *Anderson*, 45 F.3d at 1316 (quoting *Bell v. Wolfish*, 441 U.S. 520 (1979)). As such, Plaintiff's placement in administrative segregation for a year and a half does not violate the Eighth Amendment.

Religion. The ability to practice religion is not one of the basic necessities protected by the Eighth Amendment. *See Hoptowit*, 682 F.2d at 1246 ("An institution's obligation under the eighth amendment is at an end if it furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety."); *Means v. Nev. Dep't of Corrs.*, No. 3:10-cv-0076-LRH-RAM, 2010 U.S. Dist. LEXIS 112507, at *8, 2010 WL 3982035, at *3 (D. Nev. Oct. 7, 2010) ("The facts alleged by plaintiff do not state a claim under the Eighth Amendment. The denial of religious exercise does not present a 'substantial risk of serious harm' and have nothing to do with a denial of food, shelter, medical care of other aspects of his physical existence in prison."); *Alexander v. Graham*, No. 3:10-cv-00429-RCJ-WGC, 2014 U.S. Dist. LEXIS 54111, at *24, 2014 WL 1576737, at *9 (D. Nev. Apr. 18, 2014) (A court has not "held that restrictions on access to . . . religious . . . programs violate the Eighth Amendment."); Thus, Plaintiff's alleged inability to practice his religion while in administrative housing does not satisfy the Eighth Amendment's objective prong.

Classes. "Idleness and the lack of programs are not Eighth Amendment violations," and "simply do[] not amount to the infliction of pain." *Hoptowit*, 682 F.2d at 1254–55. "There is no constitutional right to rehabilitation." *Id. See also Toussaint v. McCarthy*, 801 F.2d 1080, 801 F.2d at 1106–08 (9th Cir. 1986) (holding that the lack of work, educational, and vocational program opportunities in administrative segregation does not violate the Constitution). Thus, Plaintiff's inability to attend classes while in administrative segregation does not violate the Eighth Amendment.

11

Showers. The Eighth Amendment requires prison officials to provide inmates adequate "sanitation," *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005), which includes the right to shower, *see, e.g., Toussaint*, 801 F.2d at 1110–11. "But a prison that limits the number of showers an inmate can take does not necessarily violate an inmate's Eighth Amendment rights unless the number of showers is so limited as to deny the inmate his right to basic sanitation." *Baptisto v. Ryan*, No. CV 03-1393-PHX-SRB, 2005 U.S. Dist. LEXIS 22295, at *43, 2005 WL 2416356, at *13 (D. Ariz. Sept. 30, 2005). Plaintiff's allegation that he is only permitted three showers per week does not rise to the level of a constitutional violation. *See, e.g., Toussaint v. McCarthy*, 597 F. Supp. 1388, 1411 (N.D. Cal. 1984) ("The Court concludes that minimum standards of decency require that lockup inmates without hot running water in their cells be accorded showers three times per week in facilities reasonably free of standing water, fungus, mold and mildew."); *Parks v. Brooks*, No. 3:06-cv-00095-LRH (VPC), 2007 U.S. Dist. LEXIS 103803, at *28 (D. Nev. Aug. 7, 2007) ("Two showers per week rather than three is not an 'objectively, sufficiently serious' deprivation. The Constitution requires only 'adequate' hygiene."), *rev'd on other grounds*, 302 Fed. Appx. 611 (9th Cir. 2008).

Telephone Calls. Denial of access to the telephone does not give rise to an Eighth Amendment claim. *Williams v. ICC Comm.*, 812 F. Supp. 1029, 1034 (N.D. Cal. 1992) ("This court is aware of no authority to support a claim of constitutional violation due to the deprivation of telephone access for convicted prisoners."); *Toussaint*, 597 F. Supp. at 1413 ("Plaintiffs cite to no authority for the assertion that the complete denial to inmate of access to telephone violates contemporary standards of decency inherent in the eighth amendment."). As such, Plaintiff's lack of telephone calls does not satisfy the Eighth Amendment's objective prong.

///

Exercise.  "[E]xercise has been determined to be one of the basic human necessities protected by the Eighth Amendment." *Hearns*, 413 F.3d at 1042 (quoting *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993)).  "[L]ong-term denial of *outdoor* exercise is unconstitutional." *LeMaire*, 12 F.3d at 1458; *see, e.g., Lopez v. Smith*, 203 F.3d 1122, 1132–33 (9th Cir. 2000) (holding that deprivation of outdoor exercise for six and a half weeks meets the objective requirement of the Eighth Amendment).  This protection applies to "inmates confined to continuous and long-term segregation." *Keenan v. Hall*, 83 F.3d 1083, 1089–90 (9th Cir. 1996).  Here, Plaintiff alleges that he has been in SHU for 365 days and is confined in his cell for twenty hours per day, with two hours of daily exercise in a separate, slightly larger cell.  (Compl. 4.)  Allowing inmates to exercise indoors does not meet the obligation to provide inmates outdoor exercise.  *See Keenan*, 83 F.3d at 1089–90 (allowing plaintiff to proceed to trial on Eighth Amendment claim where defendants restricted his exercise to indoor rooms).  The allegations of deprivation of outdoor exercise for 365 days meets the objective prong of the Eighth Amendment.

### b.    Subjective Prong.

Nonetheless, the Complaint does not satisfy the subjective prong.  There are no allegations from which it reasonably could be inferred that any Defendant acted with deliberate indifference to Plaintiff's health or safety.  The only specific allegations in the Complaint regarding the Defendants are that:  Defendant Marshall placed Plaintiff into ad-seg (Compl. 5); Defendant Lieger issued a second ad-seg notice to Plaintiff (*id.* at 7); Defendant Aguirre served as the senior hearing officer on Plaintiff's investigative employee report, denied all of Plaintiff's questions, and denied Plaintiff's due process rights to fully cross-examine the victim and others involved in the matter (*id.* at 3.); and Defendant Godfrey denied Plaintiff's first-level appeal (*id.* at 9).  It cannot reasonably be inferred from these allegations that

any Defendant knew of, and disregarded, an excessive risk to Plaintiff's health or safety as a result of his prolonged lack of outdoor exercise. *See Farmer*, 511 U.S. at 837.

For these reasons, Plaintiff's Eighth Amendment cruel and unusual punishment claim fails. If Plaintiff files an amended complaint with an Eighth Amendment claim for cruel and unusual punishment, he must correct these deficiencies or risk dismissal of this claim.

### 2. The Complaint Does Not State a Sixth Amendment Confrontation Clause Claim.

Plaintiff asserts that his Sixth Amendment right to face his accuser was violated. (Compl. 6.) Specifically, Plaintiff contends that Defendant Aguirre denied all of Plaintiff's questions—which would have exonerated Plaintiff completely—and deemed them irrelevant, and denied Plaintiff the right to cross-examine the victim and all others involved in the incident. (*Id.* at 3.)

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by the witnesses against him." U.S. Const. amend. XVI. However, "the Confrontation Clause [of the Sixth Amendment] does not come into play until the initiation of criminal proceedings." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984). "Prison disciplinary proceedings are not a part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see also Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976) ("Prison disciplinary hearings are not criminal proceedings."). As such, Plaintiff did not have a Sixth Amendment right to confront and cross-examine witnesses at his prison disciplinary hearing. *See McDonald v. Holland*, No. ED CV 14-2499-JAK (E), 2015 U.S. Dist. LEXIS 85156, at *14–15 (C.D. Cal. May 15,

2015) ("To the extent Petitioner asserts a Confrontation Clause claim, Petitioner's claim fails because the Constitution does not grant a prisoner any right to confront witnesses at a prison disciplinary hearing.").

For these reasons, Plaintiff's Sixth Amendment claim fails. If Plaintiff files an amended complaint with a Sixth Amendment claim, such a claim will be subject to dismissal.

### 3.    The Complaint Does Not State a Fourteenth Amendment Procedural Due Process Claim.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits the government from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. To plead a procedural due process violation, a plaintiff must allege two elements: (1) the plaintiff has a "liberty or property interest which has been interfered with by the State"; and (2) the procedures employed to deprive the plaintiff of liberty or property were constitutionally insufficient. *Ky. Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

#### a.    Liberty Interest.

The Complaint sufficiently alleges a constitutionally-protected liberty interest: Plaintiff's good time credits. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 453 (1985) ("[D]ue process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits."); *see also Wallace v. Fox*, No. CF 15-6305-PSG (SP), 2017 U.S. Dist. LEXIS 151599, at *9 (C.D. Cal. July 31, 2017) (recognizing California good time credits as a protected liberty interest under the Fourteenth Amendment). Thus, whether Plaintiff has alleged a cognizable Fourteenth Amendment claim turns on whether the procedures that deprived him of his time good-time credits were constitutionally deficient.

### b.    Procedural Protections.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set forth the required due process protections for inmate disciplinary proceedings. However, a lesser quantum of due process than *Wolff* is required when a prisoner is placed into administrative segregation. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983).

> [W]hen prison officials initially determine whether a prisoner is to be
> segregated for administrative reasons due process only requires the
> following procedures: Prison officials must hold an informal
> nonadversary hearing within a reasonable time after the prisoner is
> segregated. The prison officials must inform the prisoner of the
> charges against the prisoner or their reasons for considering
> segregation. Prison officials must allow the prisoner to present his
> views.
>
> We specifically find that the due process clause does not require
> detailed written notice of charges, representation by counsel or
> counsel-substitute, an opportunity to present witnesses, or a written
> decision describing the reasons for placing the prisoner in
> administrative segregation. We also find that due process does not
> require disclosure of the identity of any person providing information
> leading to the placement of a prisoner in administrative segregation.

*Toussaint*, 801 F.2d at 1100–01 (citations omitted), *abrogated in part on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995).

Here, Plaintiff alleges that Defendant Aguirre was the improper senior hearing officer because he was not a lieutenant or higher, Defendant Aguirre improperly struck some of Plaintiff's questions, and Plaintiff was denied his due process rights to fully cross-examine the victim and others involved in the matter. (Compl. 3.) These allegations do not assert violation of the procedural due process protections required for administrative segregation. *See Toussaint*, 801 F.2d at 1100–01. No

allegations suggest that Plaintiff was denied an informal non-adversary hearing within a reasonable time after he was segregated, denied notice of the charges against him, or denied the opportunity to present his views. *See id.* at 1100.

Plaintiff also alleges that the charges against him were false, there was no evidence of his personal involvement in the incident, and a confidential informant provided misinformation. (Compl. 5.) Even accepting these allegations as true, the Constitution does not protect Plaintiff from false accusations. *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) ("Even accepting as true Plaintiff's allegation that the report was falsified, courts have held that a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports."), *aff'd without opinion*, 168 F.3d 498 (9th Cir. 1999); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"). Due process claims based on administrative segregation are subject to the "some evidence" standard of *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985). *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003). "Under *Hill*, [courts] do not examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is whether there is any evidence in the record that could support the conclusion.'" *Id.* (quoting *Hill*, 472 U.S. at 455–56). No allegations suggest that Plaintiff's administrative segregation failed to meet the "minimally stringent" "some evidence" standard. *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). Rather, the Complaint alleges that the decision was based on "false" charges and "misinformation" given by a confidential informant. (Compl. 5.) Even assuming the truth of these allegations, as the Court must at this time, the Court cannot reassess a confidential informant's credibility or reweigh evidence in applying the "some evidence" standard. *See Bruce*, 351 at 1287. The Complaint does not contain sufficient allegations to lead to the reasonable inference that the

17

decision to place Plaintiff in administrative segregation was not supported by "some evidence.

To the extent that Plaintiff asserts a due process claim due to Defendant Godfrey's denial of Plaintiff's first-level appeal (Compl. 9), such a claim also would fail. Defendant Godfrey's alleged failure to process Plaintiff's grievances properly, without more, is not enough to establish a violation of Plaintiff's constitutional rights. *See Peralta v. Dillard*, 744 F.3d 1076, 1087 (9th Cir. 2014). Inmates are not entitled to a specific grievance procedure. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also Gonzales v. Woodford*, No. C 04-5447 SI (pr), 2005 U.S. Dist. LEXIS 6621, at *5–6 (N.D. Cal. Apr. 12, 2005) ("Because [plaintiff] had no federal constitutional right to a properly functioning appeal system, an incorrect decision on an administrative appeal, a failure to process an appeal in a particular way, or any other structural problem in the appeals system did not amount to a violation of his right to due process.").

For these reasons, the Complaint fails to state a Fourteenth Amendment procedural due process claim. If Plaintiff asserts violations of his procedural due process rights in any amended complaint, he must correct these deficiencies or risk dismissal of this claim.

### 4. The Complaint Does Not State a Fourteenth Amendment Equal Protection Claim.

"The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Angelotti Chiropractic v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015) (quoting U.S. Const. amend. XIV, § 1) (alteration in original). "The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).

"This does not mean, however, that all prisoners must receive identical treatment and resources." *Id.* A plaintiff can state an equal protection claim: (1) by alleging "facts plausibly showing that 'the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class," *id.* (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (alteration in original)); or (2) as a "class of one" by alleging that plaintiff has "been intentionally treated differently from others similarly situated and that there is no rational basis for the treatment," *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, the Complaint does not allege facts to support the reasonable inference that Plaintiff is a member of a protected class and that Defendants intentionally treated Plaintiff differently from any other inmate because of his membership in that protected class. *See Hartmann*, 707 F.3d at 1123. Prisoners are not a suspect class for equal protection purposes, *see Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999), and the Complaint does not allege that Defendants treated Plaintiff differently due to a suspect distinction. *See New Orleans v. Dukes*, 427 U.S. 297, 303 (1975) (noting that "suspect distinctions such as race, religion, or alienage" are protected classes for equal protection purposes). The Complaint also does not include any allegations from which it could be inferred that any Defendant acted with an intent or purpose to discriminate against Plaintiff *because of* his membership in a protected class. *See Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status.") (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994)). Finally, the Complaint does not allege facts to support the conclusion that any Defendant intentionally treated Plaintiff differently from others similarly situated without any rational basis for the treatment. *See Village of Willowbrook*, 528 U.S. at 564.

///

19

For these reasons, the Complaint fails to state a Fourteenth Amendment equal protection claim. If Plaintiff asserts violations of his equal protection rights in any amended complaint, he must correct these deficiencies.

**5.    The Complaint Does Not State a First Amendment Free Exercise Claim.**

The First Amendment prohibits the government from making laws "prohibiting the free exercise" of religion. U.S. Const. amend. I; *see also Hartmann*, 707 F.3d at 1122 (noting that the free exercise guarantee is applicable to state action by incorporation through the Fourteenth Amendment). "The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (citations omitted).

A religious claim must satisfy two criteria to merit protection under the Free Exercise Clause of the First Amendment: (1) "the claimant's proffered belief must be sincerely held; the First Amendment does not extend to so-called religions which . . . are obviously shams and absurdities and whose members are patently devoid of religious sincerity"; and (2) "the claim must be rooted in religious belief, not in purely secular philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (alteration in original) (internal quotation marks and citations omitted). In addition, "[a] person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (alteration in

20

original) (quoting *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013)).  Finally, "a prisoner's Free Exercise Clause claim will fail if the State shows that the challenged action is 'reasonably related to legitimate penological interests.'"  *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Four factors are balanced in determining whether an action is reasonably related to legitimate penological interests:

> (1) whether there is a valid, rational connection between a state
> interest and the prison regulation; (2) whether prisoners have an
> alternative method of engaging in religious practice; (3) the impact
> accommodation of the asserted constitutional right would have on
> guards and other inmates; and (4) the absence of ready alternatives to
> the challenged regulation.

*Walker*, 789 F.3d at 1138–39 (citing *Turner*, 482 U.S. at 89–90).

Here, the Complaint does not include sufficient allegations to state a First Amendment free exercise claim.  Rather, the Complaint includes only a general allegation that Plaintiff's confinement in SHU has prevented him from practicing his religion.  (Compl. 6.)  There are insufficient allegations to determine whether Plaintiff's religious claims merit protection—that is, that Plaintiff's beliefs are "sincerely held" and "rooted in religious belief, not in purely secular philosophical concerns."  *Malik*, 16 F.3d at 333.  The Complaint also fails to allege any specific religious conduct that was substantially burdened by any Defendant's actions.  *See Am. Family Ass'n v. City & Cty. of S.F.*, 277 F.3d 1114, 1124 (9th Cir. 2002) (concluding that a complaint that fails to allege "any specific religious conduct that was affected by the Defendants' actions" fails to state a free exercise claim).

For these reasons, the Complaint fails to state a First Amendment free exercise claim.  If Plaintiff asserts violations of his free exercise rights in any amended complaint, he must correct these deficiencies.

///

21

### 6. The Complaint Does Not State a RLUIPA Claim.

"RLUIPA . . . protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates the burden is "in furtherance of a compelling government interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA provides more "expansive protection" for inmates' "religious liberty" than the First Amendment. *Holt v. Hobbs*, 574 U.S. 352, 135 S. Ct. 853, 860 (2015); *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008) (RLUIPA "mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard under *Turner*.").

"To state a claim under RLUIPA, a prisoner must show that: (1) he takes part in a religious exercise, and (2) the State's actions have substantially burdened that exercise." *Walker*, 789 F.3d at 1134 (internal quotations omitted). "RLUIPA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief, but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt*, 135 S. Ct. at 862 (internal quotations and citations omitted). "To constitute a substantial burden, a limitation of religious practice 'must impose a significantly great restriction or onus upon such exercise.'" *Walker*, 789 F.3d at 1135 (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). "A substantial burden need not actually force a litigant to change his practices; a violation may occur 'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial

22

pressure on an adherent to modify his behavior and to violate his beliefs.'" *Walker*, 789 F.3d at 1135 (alteration in original) (quoting *Warsoldier v. Woodford*, 418, F.3d 989, 995 (9th Cir. 2005)). If the inmate satisfies his initial burden, then the State must "prove its actions were the least restrictive means of furthering a compelling governmental interest." *Walker*, 789 F.3d at 1134.

The Complaint does not assert RLUIPA claims against Defendants because RLUIPA does not authorize suits against state officials in their individual capacities. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014); *Jones*, 791 F.3d at 1031 ("RLUIPA does not authorize suits for damages against state officials in their individual capacities because individual state officials are not recipients of federal funding and nothing in the statute suggests any congressional intent to hold them individually liable."). In addition, as stated above, the Complaint fails to allege any specific religious conduct that was substantially burdened by any Defendant's actions.

For these reasons, the Complaint fails to state a RLUIPA claim. If Plaintiff asserts violations of RLUIPA in any amended complaint, he must correct these deficiencies.

### 7. The Complaint Does Not State a Section 1983 Conspiracy Claim.

A conspiracy claim involving Section 1983 requires allegations supporting "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (quoting *United Steelworkers of Am.*, 865 F.2d at 1541). This agreement or meeting of the minds may be inferred on the basis of circumstantial

evidence, such as the actions of the defendants. *Mendocino Envtl. Ctr. v. Mendocino County,* 192 F.3d 1283, 1301 (9th Cir. 1999). A showing that defendants committed acts that "are unlikely to have been undertaken without an agreement" may support the inference of conspiracy. *Id.* (quoting *Kunik v. Racine County*, 946 F.2d 1574, 1580 (7th Cir. 1991)). Conclusory allegations of conspiracy to violate Constitutional rights are insufficient to state a Section 1983 claim. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). In addition, a conspiracy to violate constitutional rights must be predicated on a viable underlying constitutional claim. *See Thornton v. City of St. Helens,* 425 F.3d 1158, 1168 (9th Cir. 2005). A conspiracy claim requires "an actual deprivation of constitutional rights." *Hart v. Parks,* 450 F.3d 1059, 1071 (9th Cir. 2006).

The Complaint does not state a conspiracy claim for two reasons. First, the Complaint does not allege specific facts of an agreement or meeting of the minds to violate Plaintiff's constitutional rights. Without any supporting facts, the Complaint simply alleges that Defendants conspired with each other to fabricate documents and information relative to Plaintiff's July 11, 2018 RVR. (Compl. 4.) "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns*, 883 F.2d at 821. Second, as explained above, the Complaint does not adequately state any deprivation of constitutional rights. *See Woodrum v. Woodward County*, 866 F.2d 1121, 1126–27 (9th Cir. 1989) (explaining that Section 1983 applies only to conspiracy claims that result in a deprivation of constitutional rights).

For these reasons, Plaintiff's Section 1983 conspiracy claim fails. If Plaintiff alleges a conspiracy in any amended complaint, Plaintiff must correct these deficiencies.

///

///

## V.    CONCLUSION

For the reasons stated above, the Court **DISMISSES** the Complaint **WITH LEAVE TO AMEND**.  Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a First Amended Complaint ("FAC"), or (2) advise the Court that Plaintiff does not intend to file a FAC.

The FAC must cure the pleading defects discussed above and shall be complete in itself without reference to the Complaint.  *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits.  The amended pleading shall not refer to the prior, superseding pleading.").  This means that Plaintiff must allege and plead any viable claims in the FAC again.  Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the Complaint.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims.  Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief."  **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.**  In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims.  Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details.  It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation.  Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a FAC, or timely advise the Court that Plaintiff does not intend to file a FAC, will result in a recommendation that this action be dismissed for failure to**

///

prosecute and/or failure to comply with court orders pursuant to **Federal Rule of Civil Procedure 41(b).**

If Plaintiff no longer wishes to pursue this action in its entirety or with respect to particular Defendants, he voluntarily may dismiss this action or particular Defendants by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). **A form Notice of Dismissal is attached for Plaintiff's convenience.**

Plaintiff is advised that this Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of the claim. Accordingly, although the undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or Defendant in order to pursue this action. However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the undersigned ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections. *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

IT IS SO ORDERED.

DATED: October 24, 2019

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE