O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONNEY KILLENSWORTH, | Case No. 2:19-cv-06029-VBF (MAA) |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND** |
| v. | |
| D. GODFREY *et al.* | |
| Defendants. | |

**I.     INTRODUCTION**

On July 10, 2019, Plaintiff Tonney Killensworth ("Plaintiff"), an inmate at California State Prison – Corcoran, proceeding *pro se*, filed a Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Compl., ECF No. 1.)  On October 24, 2019, the Court screened and dismissed the Complaint with leave to file an amended Complaint. (Order Dismiss Compl., ECF No. 13.) Plaintiff filed a First Amended Complaint on November 6, 2019. ("FAC," ECF No. 14 .)

The Court has screened the FAC as prescribed by 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B).  For the reasons stated below, the FAC is **DISMISSED WITH LEAVE TO AMEND**. Plaintiff is **ORDERED** to, within thirty days after

the date of this Order, either: (1) file a Second Amended Complaint, or (2) advise the Court that Plaintiff does not intend to file a Second Amended Complaint.

## II. PLAINTIFF'S ALLEGATIONS AND CLAIMS

The FAC is filed against: (1) Sergeant D. Godfrey, (2) Sergeant R. Aguirre, (3) Lieutenant G. Marshall, and (4) Lieutenant B. Legier (each a "Defendant" and collectively, "Defendants"). (FAC 3–4.)[1] Each Defendant is sued in his or her individual capacity. (*Id.*)

The FAC and attached exhibits[2] contain the following allegations and claims. The July 13, 2018 Crime/Incident Report authored by Defendant Legier states that on Wednesday, July 11, 2018 at approximately 9:49 a.m., the California State Prison – Los Angeles County Investigative Service Unit responded to a Code 1 alarm in Facility C. (*Id.* at 20.) Inmate Jackson was the victim of an attempted murder with a weapon by inmate Castro. (*Id.*)

On July 11, 2018 at 7:51 p.m., Plaintiff was served an Administrative Segregation Unit Placement Notice ("Ad-Seg Notice"), authored by Defendant Marshall. (*Id.* at 12.) The Ad-Seg Notice stated that "confidential information was received indicating [Plaintiff] may have played a role in the attempted murder of Inmate Jackson," and that Plaintiff "will remain in Ad-Seg pending completion of the investigation" by ISU. (*Id.*) Plaintiff contends that Defendant Marshall placed him into administrative segregation solely on hearsay and no other evidence, and paperwork was forged and fabricated against Plaintiff. (*Id.* at 5–6.) Plaintiff asserts that he was in his assigned cell during the incident, "oblivious to what was going on." (*Id.* at 3.)

---

[1] Citations to pages in docketed documents reference those generated by CM/ECF.

[2] Documents attached to a complaint are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

2

On July 20, 2018, Plaintiff was served a second Ad-Seg Notice, authored by Defendant Legier. (*Id*. at 16.) The second Ad-Seg Notice stated that the investigation into Plaintiff's involvement in the attempted murder of inmate Jackson was completed, and "a determination to charge [Plaintiff] with Solicitation of Murder of an Inmate was made on July 19, 2018 based on confidential memorandum dated July 11, 2018, July 12, 2018 and July 13, 2018." (*Id*.) Plaintiff alleges that Defendant Legier conspired with the other Defendants to fabricate documents and deny Plaintiff an opportunity to defend himself against "trumped up" charges. (*Id*. at 6.)

An August 8, 2018 RVR Supplemental Investigative Report ("Report) stated that on July 31, 2018, J. Aparicio was assigned as the investigative employee for Plaintiff's Rules Violation Report ("RVR"). (*Id*. at 9.) The Report listed the "reporting employee" as Defendant Aguirre. (*Id*.)

Plaintiff contends that Defendant Aguirre was his senior hearing officer. (*Id*. at 5.) Plaintiff alleges that he asked to question the two inmates involved in the incident, but Defendant Aguirre deemed all of Plaintiff's questions irrelevant. (*Id*.) Plaintiff believes that if he had been allowed to question the inmates, he would have been able to prove that he had nothing to do with the incident. (*Id*.)

On November 1, 2018, Plaintiff filled out a grievance directed towards Defendant Aguirre, asking Defendant Aguirre why he was involved in Plaintiff's RVR and why he declined Plaintiff's questions on his investigative report. (*Id*. at 11.) On November 2, 2018, Defendant Aguirre responded that he only entered the RVR on behalf of Correctional Officer Camacho because he was on vacation, and Defendant Aguirre did not decline Plaintiff's questions because that can only be done by the hearing officer. (*Id*.)

Plaintiff alleges that Defendant Godfrey compounded the problem by denying Plaintiff the fair chance to use the prison grievance system, discriminating against Plaintiff, and not giving him the same treatment as others. (*Id*. at 3, 6.)

Based on the foregoing, Plaintiff asserts violations of the following rights: (1) due process (*id*. at 5.); (2) Fourteenth Amendment equal protection (*id*.); and (3) Eighth Amendment (*id*. at 7.). Plaintiff seeks $200,000 in damages and restoration of his good-time credits. (*Id*. at 8.)

## III. LEGAL STANDARD

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma pauperis* (28 U.S.C. § 1915(e)(2)(B)). The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is: (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915(e)(2)(B)(ii)). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8"), "which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'" *See Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007)). In

reviewing a motion to dismiss, the court will accept the plaintiff's factual allegations as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Although "detailed factual allegations" are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss." *Park*, 851 F.3d at 918 (alteration in original) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001)). Rather, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." *Id.*

Where a plaintiff is *pro se*, particularly in civil rights cases, courts should construe pleadings liberally and afford the plaintiff any benefit of the doubt. *Wilhelm*, 680 F.3d at 1121. "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). A court should grant a *pro se* plaintiff leave to amend a defective complaint "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar*, 698 F.3d at 1212 (quoting *Shucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)).

5

## IV. DISCUSSION

### A. Plaintiff's Claims Potentially Are *Heck*-Barred.

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under [Section 1983]. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citations omitted).

A Section 1983 complaint must be dismissed pursuant to *Heck v. Humphrey* if judgment in favor of the plaintiff would undermine the validity of his or her conviction or sentence, unless the plaintiff can demonstrate that the conviction or sentence already has been invalidated, either through state litigation or federal writ of habeas corpus. 512 U.S. at 477, 486–87 (1994). However, the *Heck* bar applies only "where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005).

In *Edwards v. Balisock*, the Supreme Court applied *Heck* to bar a Section 1983 action involving allegedly defective prison disciplinary procedures resulting in a loss of good time credits. 520 U.S. 641, 648 (1997). The Supreme Court later clarified in *Muhammad v. Close* that an inmate's Section 1983 challenge to disciplinary proceedings are not barred by *Heck* if the challenge "threatens no consequence for [the] conviction or the duration of [the] sentence." 540 U.S. at 751. If the invalidity of the disciplinary proceedings, and therefore the restoration of good time credits, would not necessarily affect the length of time to be served, then the claim falls outside the core of habeas and may be brought pursuant to Section 1983. *See id.* at 754–55.

Applying that limitation, the Ninth Circuit concluded in *Nettles v. Grounds* that *Heck* did not bar a California inmate serving a life sentence from bringing a Section 1983 challenge to a disciplinary hearing that resulted in the loss of good

6

time credits. 830 F.3d 922, 934–36 (9th Cir. 2016) (en banc). Because Nettles was serving a life sentence, success on the merits of his claim "would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole." *Id*. at 934–35. "Under California law, the parole board must consider '[a]ll relevant, reliable information' in determining suitability for parole." *Id.* at 935 (quoting Cal. Code Regs. Tit. 15, § 2281(b)). "A rules violation is merely one of the factors shedding light on whether a prisoner 'constitutes a current threat to the public safety." *Nettles*, 830 F.3d at 935 (quoting *In re Lawrence*, 44 Cal.4th 1181, 1191 (2008)). The parole board may deny parole "on the basis of any of the grounds presently available to it." *Nettles*, 830 F.3d at 935 (quoting *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003)). Thus, "the presence of a disciplinary infraction does not compel the denial of parole, nor does an absence of an infraction compel the grant of parole." *Nettles*, 830 F.3d at 935.

Here, Plaintiff seeks restoration of lost good-time credits. (FAC 8.) Plaintiff alleges that his sentence is twenty-four years, that he is a youth offender with a "board date" in 2020, and that his parole date is 2027. (*Id*.) As Plaintiff is not serving a life sentence, restoration of lost good-time credits potentially could impact the length of his sentence and thus potentially be *Heck*-barred. *See cf. Nettles*, 830 F.3d at 934–36. However, the Court makes no ruling on the potential applicability of *Heck* at this time.

**B.     The FAC Does Not State a Section 1983 Claim.**

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in original) (quoting 42 U.S.C. § 1983). The purpose of Section 1983 is "to deter state

actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt*, 504 U.S. at 161. To state a claim under Section 1983, a plaintiff must allege: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). For the reasons below, the Court concludes that the FAC does not state any Section 1983 claims.

### 1. The FAC Does Not State an Eighth Amendment Claim for Cruel and Unusual Punishment.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "In other words, they must not be devoid of legitimate penological purpose, or contrary to 'evolving standards of decency that mark the progress of a maturing society.'" *Morgan*, 465 F.3d at 1045 (citation omitted) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). "An Eighth Amendment claim that a prison official has deprived inmates of humane conditions must meet two requirements, one objective and one subjective." *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (quoting *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1995)).

Objective Prong. First, "the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal

quotations and citations omitted). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. 'The more basic the need, the shorter the time it can be withheld.'" *Id.* (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)).

Here, the FAC does not allege a "sufficiently serious" denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Indeed, the FAC does not allege any inhumane conditions of confinement. To the extent that Plaintiff's Eighth Amendment claim is based on his placement in administrative segregation, the Court previously explained that administrative segregation does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. *See Anderson v. County of Kern*, 45 F.3d 1310, 1315–16 (9th Cir. 1995). (*See* Order Dismiss Compl. 10–11.)

Subjective Prong. Second, subjectively, the prison official must act with "deliberate indifference" to an inmate's health or safety—that is, "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, there are no allegations in the FAC from which it reasonably could be inferred that any Defendant acted with deliberate indifference to Plaintiff's health or safety. The only specific allegations in the FAC regarding Defendants are that: Defendant Marshall issued an Ad-Seg Notice and placed Plaintiff into administrative segregation based on hearsay and fabricated documents (FAC 5–6, 12); Defendant Lieger issued a second Ad-Seg Notice to Plaintiff and conspired with the other Defendants to deny Plaintiff the opportunity to defend himself (*id*. at 6, 16);

Defendant Aguirre served as the hearing officer on Plaintiff's investigative employee report and denied Plaintiff's questions to the witnesses (*id*. at 5.); and Defendant Godfrey denied Plaintiff's appeal (*id*. at 11). It cannot reasonably be inferred from these allegations that any Defendant knew of, and disregarded, an excessive risk to Plaintiff's health or safety. *See Farmer*, 511 U.S. at 837.

For these reasons, Plaintiff's Eighth Amendment cruel and unusual punishment claim fails. The Court previously explained the deficiencies of Plaintiff's Eighth Amendment claim. (*See* Order Dismiss Compl. 9–14.) If Plaintiff files an amended complaint with an Eighth Amendment claim for cruel and unusual punishment, he must correct these deficiencies or risk dismissal of this claim.

### 2. The FAC Does Not State a Fourteenth Amendment Procedural Due Process Claim.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits the government from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. To plead a procedural due process violation, a plaintiff must allege two elements: (1) the plaintiff has a "liberty or property interest which has been interfered with by the State"; and (2) the procedures employed to deprive the plaintiff of liberty or property were constitutionally insufficient. *Ky. Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Liberty Interest. The FAC sufficiently alleges a constitutionally-protected liberty interest: Plaintiff's good time credits. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 453 (1985) ("[D]ue process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits."); *see also Wallace v. Fox*, No. CF 15-6305-PSG (SP), 2017 U.S. Dist.

LEXIS 151599, at *9 (C.D. Cal. July 31, 2017) (recognizing California good time credits as a protected liberty interest under the Fourteenth Amendment). Thus, whether Plaintiff has alleged a cognizable Fourteenth Amendment claim turns on whether the procedures that deprived him of his time good-time credits were constitutionally deficient.

Procedural Protections. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set forth the required due process protections for inmate disciplinary proceedings. However, a lesser quantum of due process than *Wolff* is required when a prisoner is placed into administrative segregation. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983).

> [W]hen prison officials initially determine whether a prisoner is to be segregated for administrative reasons due process only requires the following procedures: Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views.
> We specifically find that the due process clause does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation. We also find that due process does not require disclosure of the identity of any person providing information leading to the placement of a prisoner in administrative segregation.

*Toussaint v. McCarthy*, 801 F.2d 1080, 1100–01 (9th Cir. 1986) (citations omitted), *abrogated in part on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995).

///

1 Here, Plaintiff alleges that Defendant Aguirre improperly deemed Plaintiff's
2 questions as irrelevant and denied Plaintiff the opportunity question witnesses.
3 (FAC 5.) These allegations do not assert violation of the procedural due process
4 protections required for administrative segregation. *See Toussaint*, 801 F.2d at
5 1100–01. No allegations suggest that Plaintiff was denied an informal non-
6 adversary hearing within a reasonable time after he was segregated, denied notice of
7 the charges against him, or denied the opportunity to present his views. *See id.*

Plaintiff also alleges that Defendants forged and fabricated the paperwork against Plaintiff. (FAC 5–6.) Even accepting these allegations as true, the Constitution does not protect Plaintiff from false accusations. *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) ("Even accepting as true Plaintiff's allegation that the report was falsified, courts have held that a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports."), *aff'd without opinion*, 168 F.3d 498 (9th Cir. 1999); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest").

To the extent Plaintiff challenges the sufficiency of the evidence supporting his administrative segregation, such a claim would fail based on the allegations in the FAC. Due process claims based on administrative segregation are subject to the "some evidence" standard of *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985). *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003). "Under *Hill*, [courts] do not examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is whether there is any evidence in the record that could support the conclusion.'" *Id.* (quoting *Hill*, 472 U.S. at 455–56). No allegations suggest that Plaintiff's administrative segregation failed to meet the "minimally stringent" "some evidence" standard. *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987).

Finally, to the extent that Plaintiff asserts a due process claim due to Defendant Godfrey's denial of Plaintiff's appeal (FAC 3, 6), such a claim also would fail. Defendant Godfrey's alleged failure to process Plaintiff's grievance properly, without more, is not enough to establish a violation of Plaintiff's constitutional rights. *See Peralta v. Dillard*, 744 F.3d 1076, 1087 (9th Cir. 2014). Inmates are not entitled to a specific grievance procedure. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also Gonzales v. Woodford*, No. C 04-5447 SI (pr), 2005 U.S. Dist. LEXIS 6621, at *5–6 (N.D. Cal. Apr. 12, 2005) ("Because [plaintiff] had no federal constitutional right to a properly functioning appeal system, an incorrect decision on an administrative appeal, a failure to process an appeal in a particular way, or any other structural problem in the appeals system did not amount to a violation of his right to due process.").

For these reasons, the FAC fails to state a Fourteenth Amendment procedural due process claim. The Court previously explained the deficiencies of Plaintiff's Fourteenth Amendment procedural due process claim. (*See* Order Dismiss Compl. 15–18.) If Plaintiff asserts violations of his procedural due process rights in any amended complaint, he must correct these deficiencies or risk dismissal of this claim.

### 3. The FAC Does Not State a Fourteenth Amendment Equal Protection Claim.

"The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Angelotti Chiropractic v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015) (quoting U.S. Const. amend. XIV, § 1) (alteration in original). "The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).

13

"This does not mean, however, that all prisoners must receive identical treatment and resources." *Id.* A plaintiff can state an equal protection claim: (1) by alleging "facts plausibly showing that 'the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class," *id.* (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (alteration in original)); or (2) as a "class of one" by alleging that plaintiff has "been intentionally treated differently from others similarly situated and that there is no rational basis for the treatment," *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, the FAC simply contains the conclusory allegation that Plaintiff "wasn't given equal protection under the Fourteenth Amendment." (FAC 5.) The FAC does not allege facts to support the reasonable inference that Plaintiff is a member of a protected class and that any Defendant intentionally treated Plaintiff differently from any other inmate because of his membership in that protected class. *See Hartmann*, 707 F.3d at 1123. Prisoners are not a suspect class for equal protection purposes, *see Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999), and the FAC does not allege that Defendants treated Plaintiff differently due to a suspect distinction. *See New Orleans v. Dukes*, 427 U.S. 297, 303 (1975) (noting that "suspect distinctions such as race, religion, or alienage" are protected classes for equal protection purposes). The FAC also does not include any allegations from which it could be inferred that any Defendant acted with an intent or purpose to discriminate against Plaintiff *because of* his membership in a protected class. *See Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status.") (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994)). Finally, the FAC does not allege facts to support the conclusion that any Defendant intentionally treated Plaintiff differently from others similarly situated without any rational basis for the treatment. *See Village of Willowbrook*, 528 U.S. at 564.

For these reasons, the FAC fails to state a Fourteenth Amendment equal protection claim. The Court previously advised Plaintiff of the deficiencies of his equal protection claim. (*See* Order Dismiss Compl. 18–20.) If Plaintiff asserts violations of his equal protection rights in any amended complaint, he must correct these deficiencies or risk dismissal of this claim.

### 4. The FAC Does Not State a Section 1983 Conspiracy Claim.

A conspiracy to violate constitutional rights must be predicated on a viable underlying constitutional claim. *See Thornton v. City of St. Helens,* 425 F.3d 1158, 1168 (9th Cir. 2005). A conspiracy claim requires "an actual deprivation of constitutional rights." *Hart v. Parks,* 450 F.3d 1059, 1071 (9th Cir. 2006).

In addition, a conspiracy claim involving Section 1983 requires allegations supporting "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (quoting *United Steelworkers of Am.*, 865 F.2d at 1541). This agreement or meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions of the defendants. *Mendocino Envtl. Ctr. v. Mendocino County,* 192 F.3d 1283, 1301 (9th Cir. 1999). A showing that defendants committed acts that "are unlikely to have been undertaken without an agreement" may support the inference of conspiracy. *Id.* (quoting *Kunik v. Racine County*, 946 F.2d 1574, 1580 (7th Cir. 1991)). Conclusory allegations of conspiracy to violate Constitutional rights are insufficient to state a Section 1983 claim. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).

The FAC does not state a conspiracy claim for two reasons. First, as explained above, the FAC does not adequately state any deprivation of constitutional

rights. *See Woodrum v. Woodward County*, 866 F.2d 1121, 1126–27 (9th Cir. 1989) (explaining that Section 1983 applies only to conspiracy claims that result in a deprivation of constitutional rights).  Second, the FAC does not allege specific facts of an agreement or meeting of the minds to violate Plaintiff's constitutional rights. Without any supporting facts, the FAC simply alleges that Defendants conspired to fabricate documents and not give Plaintiff a chance to defend himself against the false charges. (FAC 6.) "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns*, 883 F.2d at 821.

For these reasons, Plaintiff's Section 1983 conspiracy claim fails. The Court previously advised Plaintiff of these deficiencies. (*See* Order Dismiss Compl. 23–24.) If Plaintiff alleges a conspiracy in any amended complaint, Plaintiff must correct these deficiencies or risk dismissal of this claim.

## V. CONCLUSION

For the reasons stated above, the Court **DISMISSES** the FAC **WITH LEAVE TO AMEND**. Although highly doubtful that Plaintiff could amend the FAC to overcome the deficiencies explained in this order, Plaintiff may have **one final opportunity** to amend and cure the deficiencies given his *pro se* prisoner status. Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a Second Amended Complaint ("SAC"), or (2) advise the Court that Plaintiff does not intend to file a SAC.

The SAC must cure the pleading defects discussed above and shall be complete in itself without reference to the FAC. *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits. The amended pleading shall not refer to the prior, superseding pleading."). This means that Plaintiff must allege and plead any viable claims in the

///

SAC again.  Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the FAC.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims.  Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief."  **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.**  In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims.  Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details.  It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation.  Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a SAC, or timely advise the Court that Plaintiff does not intend to file a SAC, will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Plaintiff is not required to file an amended complaint, especially since a complaint dismissed for failure to state a claim without leave to amend may count as a strike under 28 U.S.C. § 1915(g).  Instead, Plaintiff may request voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a) using the attached Notice of Voluntary Dismissal form.

Plaintiff is advised that this Court's determination herein that the allegations in the FAC are insufficient to state a particular claim should not be seen as dispositive of the claim.  Accordingly, although the undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual matter in the pleading,

accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or Defendant in order to pursue this action. However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the undersigned ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections. *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

IT IS SO ORDERED.

DATED: December 19, 2019

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE